THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HELEN JAWORSKI, PLAINTIFF IN ERROR.

Submitted October 5, 1943—Decided November 10, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the plaintiff in error, *Seymour Klein*.

For the defendant in error, *William A. Wachenfeld*, Prosecutor of the Pleas; *Donal C. Fox* and *C. William Caruso*, Assistant Prosecutors.

The opinion of the court was delivered by

COLIE, J.  Plaintiff in error, Helen Jaworski, was indicted for having "maliciously and without lawful justification, with intent to cause and procure the miscarriage of Phyllis Sena, a woman then pregnant with child, did use in and upon the said Phyllis Sena divers instruments and means, to the grand jury unknown, in consequence whereof the said Phyllis Sena died, contrary to the form of the statute, &c." Upon the trial of the indictment, the jury returned a verdict of guilty.

The state's case was largely based upon the testimony of Gerald Sena who testified that because his wife, Phyllis Sena, had not menstruated for three months, a conversation took place during which she showed him a paper on which ap-

peared the name Helen Jaworski and an address. The same evening, December 2d, Mr. Sena drove to an address as directed by his wife. There he rang the bell, which was answered by Helen Jaworski's daughter. The ensuing conversation had best be related in the words of the witness: "I told Mrs. Jaworski that someone had given my wife her address and that she performed abortions, and that my wife wanted her to take care of her. So she told me she couldn't take care of it that night, but that I could bring my wife back the following night. I asked her how much the fee would be. She told me $25. I left then. I told her I would be back the following night." The next evening the Senas returned and sat down at the dining room table with Mrs. Jaworski. There was some conversation as to Mrs. Sena's condition and about money, resulting in her paying Mrs. Jaworski $25. Thereafter, Mrs. Jaworski asked Mrs. Sena to go into the bathroom where they remained for ten minutes or so when Mrs. Jaworski screamed. The husband ran to the door which was opened by Mrs. Jaworski with one hand while she held Mrs. Sena on the toilet seat with her free hand. Mrs. Sena was semi-conscious and moaning. When Mr. Sena told the plaintiff in error to call a doctor, she demurred, saying that "if she called a doctor she would get in trouble." When a doctor did arrive, Mrs. Sena was in convulsions. He administered a hypodermic to the patient and on his return at two o'clock in the morning, found alongside of the patient a foetus and the usual indicia that one would expect under such circumstances. Mrs. Sena was taken to Newark Memorial Hospital where she died on December 12th.

The county medical examiner who performed an autopsy gave the cause of death as blood poisoning from an infected womb and acute Bright's disease, in turn brought on by septicemia. When asked to give his opinion as to the cause of the convulsions, the medical examiner attributed them to the introduction of air bubbles or fat droplets in the womb during an attempted abortion and that the air bubbles or fat droplets entered the large veins in the womb, and were pumped by the heart action to the brain and produced the convulsions.

The defense was a categorical denial of the criminal act charged.

It is urged that the court erred in denying a motion for a directed verdict of acquittal when first made. The situation at the time of the motion was that the state requested permission to recall the medical examiner who had left the witness box, if the state felt it necessary to do so. The court made no ruling on the request, although when the trial was resumed and the state recalled the medical examiner, the court then, for the first time, said that it had allowed the prosecutor to reserve that right. Counsel for plaintiff in error said "that is all right with me." In the face of this acquiescence, it does not now lie in the mouth of the plaintiff in error to allege reversible error in a course of conduct expressly assented to.

Error is also urged in the denial of motions to direct a verdict of acquittal at the close of the state's case and at the close of the entire case. From an examination of the record, there was ample evidence from which the jury could find that Mrs. Sena was pregnant; that plaintiff in error had the intent to bring about an abortion and that an instrument of some kind had been introduced into the body of decedent for that purpose. There being legal evidence from which an inference of guilt could be legitimately drawn, the denial of the motions to direct an acquittal was proper.

The next assignment alleges error "in permitting the witness Martland to give opinion evidence." This broad language brings up no question to be passed upon. *State* v. *Burrell*, 112 *N. J. L.* 330 (at *p*. 337).

We have examined the charge of the court particularly with reference to the parts thereof in which error is asserted to lie and find that in each instance the parts complained of correctly state the law or are within the proper scope of the trial court's clear right to comment upon the evidence.

The judgment of the Essex County Court of Quarter Sessions is affirmed, with costs.